U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

OCT 0 2 2008

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
WESTERN DIVISION OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| BRIAN LINDBERG | CIVIL ACTION NO. 07-00641 |
| VERSUS | JUDGE DONALD E. WALTER |
| BOSSIER PARISH, LOUISIANA, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment filed on behalf of defendants, Bossier Parish Emergency Medical Services, Duxie Scott, and Cheryl McIntyre, pursuant to Federal Rule of Civil Procedure 56. Plaintiffs oppose this motion. For the reasons assigned herein, defendants' motion is **GRANTED**.

## FACTUAL BACKGROUND

Bossier Parish Emergency Medical Services ("BPEMS") was formed to provide general medical services to citizens of Bossier Parish. Beginning in 2001, BPEMS began to focus on providing advanced life support services, which can be provided only by paramedics. Around the same time, there were changes to the national curriculum for paramedics. This led to a decrease in the number of new paramedics as well as difficulty in recruiting and retaining certified paramedics. As a result, since 2001, BPEMS has hired only individuals who were already certified paramedics or indicated a desire to complete their paramedic certification while employed at BPEMS. *See* Scott Affidavit ¶ 2; McIntyre Affidavit ¶ 3,5.

In February 2005, plaintiff Brian Lindberg ("Lindberg") was hired by BPEMS as an

1

Emergency Medical Technician--Intermediate. During his pre-hire interview, Lindberg told Director Duxie Scott ("Scott") and Human Resources manager Fred McAnn "(McAnn") that he was interested in taking paramedic classes and that it was his "lifelong dream to become a paramedic." (Lindberg Depo., p.80, 1.18-23).

Sometime during the hiring process or shortly after he was hired, Lindberg learned that BPEMS received funding from Bossier Parish Community College ("BPCC") for BPEMS employees to attend a paramedic program. Amanda Waller, who was also hired in early 2005, Tommy Gilmer, an existing employee, and other employees began taking prerequisites in Spring 2005. Lindberg took his prerequisites during the summer session in 2005. Each of these students, including Lindberg, attended class and worked their regularly scheduled shifts when not in class. For Lindberg and the other new employees, the paramedic program was scheduled to begin in Fall 2005 for those taking night classes, and in Spring 2006 for those taking day classes.[1] Lindberg opted to participate in the day classes. *See* Record Documents 26 and 30. However, when the Spring 2006 paramedics program began, Lindberg refused to participate. On March 15, 2006, at a meeting of the BPEMS Board of Commissioners, he stated his reasons for not participating:

> "I refused to go by those guidelines... [w]hat they were telling me was that I was going to go to class Monday through Friday 8:00 to 3:00, then I was going to have to work on a truck whenever they tell me to at night and weekends and also cover for another girl's shift."

Transcript of 3/15/06 BPEMS Board of Commr's, p.2.

Shortly after Lindberg was hired, labor organization consisting of BPEMS employees ("Local 4464") was formed. Lindberg was an active member in the organization campaign. After Local

---

[1] The night classes were originally set to begin in Fall 2005, but was later rescheduled to begin in Spring 2006.

4464 was organized, he became a union steward. Lindberg claims that, throughout his employment with BPEMS, he and other Local 4464 members were subjected to anti-union behavior and comments by several supervisors. At the March 15, 2006 meeting, Lindberg also addressed the work environment at BPEMS:

> "The morale of this place is the lowest that I've ever seen at any place I've ever worked... [T]he reasons why, I don't have any... I've been addressed to in a few different ways by different administrative people, by yelling, I've been cursed at... And uh, that's why the morale problem is, there's some administrative problems with people speaking when they don't need to be and addressing people like they don't need to be."

*Id.* at p.1.

On April 13, 2006, less than one month after the meeting in which Lindberg stated his reasons for refusing to attend the Paramedics program, Lindberg's employment was terminated and also addressed the "morale" of the BPEMS workplace. The termination letter stated: "You are being terminated due to your failure to meet the requirements to enter the current program and your statements you have no interest in obtaining your paramedic certification." (Plaintiff's Exhibit F).

Lindberg filed suit in the Western District of Louisiana for unlawful termination against Defendants' Bossier Parish Ambulance Service (known as BPEMS), and Duxie Scott and Cheryl McIntyre (collectively "Defendants"), both in their official capacity and in their individual capacity, pursuant to 42 U.S.C. § 1983. Lindberg argues that the termination violated his constitutional rights of freedom of association and freedom to speak on a matter of public concern without retaliation, and that it was in violation of Louisiana Revised Statute § 23:833. He also alleges that he was denied due process because he was terminated without notice, an opportunity to defend himself, or a post-termination review. *See* Record Document 1. Defendants' have filed a motion for summary

judgment. As explained below, this Court agrees with defendants' and finds that the plaintiff's claim are without merit.

## SUMMARY JUDGMENT STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). A genuine issue can be resolved only by a trier of fact because it may be resolved in favor of either party. *Id.* at 248-49, 106 S.Ct. 2510. A fact is "material" if it can "affect the outcome of the suit under the governing law." *Id.* Facts that are irrelevant or unnecessary for determination of the suit should not be considered. *Id.* The substantive law will determine which facts are "material." *Id.*

The burden of proof in a summary judgment proceeding is on the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 2556 (1986). When a defendant moves for summary judgment on the plaintiff's claim, he may satisfy the summary judgment burden in one of two ways: (1) show there is no evidence to support an essential element of the plaintiff's claim, or (2) submit summary judgment evidence that negates one of the essential elements of the plaintiff's claim. *Celotex*, 477 U.S. at 322-24, 106 S.Ct. at 2553; *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). If the motion is properly made, the plaintiff "must set forth facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; 106 S.Ct. at 2511. The plaintiff "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech.*

4

*Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). All reasonable doubts about the facts must be resolved by the court in favor of the plaintiff. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 456 (5th Cir. 2005).

The standard for summary judgment mirrors the standard for a directed verdict under Fed. R. Civ. Pro. 50(a). As the Supreme Court has oft repeated:

> "Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what is called a *scintilla* of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."

*Anderson*, 477 U.S. at 251, 106 S.Ct. at 2511 (quoting *Improvement Co. v. Munson*, 14 Wall, 422, 448, 20 L.Ed. 867 (1872). In essence, the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

Additionally, Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## **FIRST AMENDMENT CLAIMS**

5

## A. Freedom of Association

The freedom of association guaranteed by the First Amendment "encompasses the right of public employees to join unions." *Prof'l Ass'n of Coll. Educ's, TSTA/NEA v. El Paso County Cmty Coll. Dist.*, 730 F.2d 258, 262 (5th Cir. 1984). This right "is violated by state actors whose purpose is either to intimidate public employees from joining a union or from taking an active part in its affairs or to retaliate against those who do." *Id.* In most First Amendment claims, the plaintiff must prove (1) that his speech involved a matter of public concern, (2) that he suffered an adverse employment action for exercising his First Amendment Rights, and (3) that his exercise of free speech was a substantial or motivating factor in the adverse employment action. *See Benningfield v. City of Houston*, 157 F.3d 369, 375 (5th Cir. 1998); *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997). However, "a public employee's claim that he has been discharged for his political affiliation in violation of his right to freely associate is not subject to the threshold public concern requirement." *Boddie v. City of Columbus, Miss.*, 989 F.2d 745, 747 (5th Cir. 1993) (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1158 (5th Cir. 1991).

It is undisputed that Lindberg was terminated from his employment with BPEMS. Thus, the only remaining relevant prong in this analysis is causation. And in order to establish a causal link between his union activity and his termination, Lindberg must first prove that the employer knew about the protected union activity. *See Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2005); *see also Keyser v. Sacramemto City Unified School Dist.*, 265 F.3d 741, 741 (9th Cir. 2001); *O'Conner v. Chicago Transit Auth.*, 985 F.2d 1362, 1370 (7th Cir. 1993), *pet. for cert. filed*, (No. 93-5212) ("Allegedly protected speech cannot be proven to motivate retaliation if there is no evidence that the defendants knew of the protected speech.").

Defendants Duxie Scott and Cheryl McIntyre each assert that they had no knowledge of Lindberg's union membership or activities. (Scott Affidavit ¶ 7[2]; McIntyre Affidavit ¶ 13[3]). Plaintiff admits that union stewards did not communicate directly with management and that he did not personally inform either Scott or McIntyre of his union activities or even that he was a union member. *See* Plaintiff's Statement of Undisputed Facts ("PSUF") ¶ 17. He points to comments he allegedly made to other supervisors at BPEMS, each lower on the chain of command than McIntyre and Scott, in an attempt to impute their knowledge of his pro-union stance to defendants. However, this argument fails because it is inappropriate to impute the knowledge or conduct of other individuals to either Scott or McIntyre.[4] *See Delchamps, Inc. v. NLRB*, 585 F.2d 91, 94 (5th Cir. 1978) ("When the employer's agent responsible for the discharge of an employee has no knowledge at the time of the firing that the employee had been involved in union activities, it would defy logic...to find that the discharge...was in retaliation for such activities.").

Consequently, Lindberg has offered no evidence whatsoever that either Scott or McIntyre had any knowledge of his union activities during his employment. Thus, he has failed to establish a causal link between his participation in Local 4464 and his termination.

---

[2] Duxie Scott states in his Affidavit: "I was not aware that Mr. Lindberg was a member of a firefighter union, that he held any public union position, or that he spoke out about union issues with anyone. I am aware from this lawsuit that Mr. Lindberg claims that he was a union steward, but I was never informed by anyone that he was a steward, that he held any position in the union, or that he was a member of the union."

[3] Cheryl McIntyre states in her Affidavit: "I was not aware while he was employed that Mr. Lindberg was a member of a union, nor that he held any union position. I did not have animosity towards unions. My husband is a member of a firefighter union at another employer."

[4] Even if this argument were valid, there is no evidence that the information was communicated to Scott or McIntyre by any other employee or supervisor at BPEMS. *See* Culver Depo., p.40, l.1-18.

7

## B. Speaking on Matters of Public Concern

Statements made by public employees on matters of public concern must be accorded First Amendment protection despite the fact that the statements are directed at their supervisors. *Pickering v. Board of Ed. Of Tp. High School Dist. 205*, 391 U.S. 563, 574, 88 S.Ct. 1731, 1737 (1968). Defendants will be liable for retaliation if Lindberg can prove that: (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated defendants' conduct. *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004); *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999).

As mentioned above, it is undisputed that Lindberg was terminated by BPEMS and thus suffered an adverse employment decision. Defendant's argument is that there is no evidence of any comment on a matter of public concern. *See* Record Document 26. Nevertheless, Lindberg asserts that his comments made at the March 15, 2006, BPEMS Board of Commissioners meeting regarding the "morale" of the BPEMS workplace were a matter of public concern. *See infra*. Whether these comments address a matter of public concern "must be determined by the content, form, and context" of the statements, "as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48, 103 S.Ct. 1684, 1690-91 (1983).

> In *Connick*, the Supreme Court provided:
>
> We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior...
>
> We view the questions pertaining to the confidence and trust that [plaintiff's] co-

8

workers possess in the various supervisors, the level of office morale, and the need for a grievance committee as mere extensions of [plaintiff's] dispute over her transfer to another section... We do not believe these questions are of public import... [Plaintiff's actions], if released to the public, would convey no information at all other than the fact that a single employee is upset with the status quo.

*Id.*

Following the Supreme Court's rationale, this court finds that Lindberg spoke before the Board only as an employee regarding the office morale of BPEMS. His statements were not a matter of public concern to citizens in the community; rather, the statements were only a matter of personal interest to him as an employee. Therefore, plaintiff's statements regarding the conditions of the BPEMS workplace were not a matter of public concern.

Further, even if this court were to agree with Plaintiff's argument that it was a matter of public concern and find that his interest outweighed the government's interest in promoting efficiency, Plaintiff's claim would fail as he cannot establish that his speech motivated Defendants' conduct. Since 2001, BPEMS has hired only those individuals that are certified paramedics or those who indicated an interest to seek their paramedic certification while employed at BPEMS. The only six individuals employed by BPEMS who do not have their paramedic certification were hired prior to 2001.[5] The remaining thirty employees are all certified paramedics or currently participating in a program to receive their certification. (Scott Affidavit ¶ 2, McIntyre Affidavit, ¶ 5). It is undisputed that, during his pre-hire interview, Lindberg expressed his interest in taking paramedic classes and stated that it was his "lifelong dream to become a paramedic." (Lindberg Depo., p.80,

---

[5] Richard Gray, an EMT hired in 1995, is the maintenance supervisor. Tracy Smith, an EMT hired in 1999, is the administrative secretary. The other four employees providing EMS services that do not have their paramedic certification are Linda Walker, hired in 1994; Tommy Hayes, hired in 1995; Barbara Burns, hired in 1999; and Kathy Powell, hired in 2000.

l.18-23). If he had not expressed his desire to receive his paramedic certification, Lindberg would not have been hired. Scott Affidavit ¶ 7).

Lindberg claims that he was first told that he would attend class during the week and only work weekends, but that McIntyre came to him a couple of weeks before class started and told him that the "plans had changed" and he would be required to work nights after attending class all day. *See* Transcript of 3/15/06 BPEMS Board of Commr's, p.1-2. But it is clear from the pleadings and the evidence that it was BPEMS's policy for all employee-students to attend class and to also work their regularly-scheduled shift at night. As early as April 2005, long before the Spring 2006 paramedics program was to begin, Lindberg received a notice stating that "[o]n evenings, or days, you will be reporting to work from class, you must attend class in full uniform... You are also expected to report directly to your station from class." The notice further provided: "This will be for the entire tenure of attendance in your curriculum." (Defendant's Exhibit 3).

Pursuant to BPEMS's policy, the daytime students attended class from 8:00 a.m. to 3:00 p.m., then reported to work at 4:00 or 5:00 p.m. whenever their shift was scheduled to work. *Id.*; Waller Depo., p.40-42; Gilmer Depo., p.29-31. Because of the shift schedules, this would have required Lindberg to go to school and work in the same day only seven to eight times each month. *See* Transcript of 3/15/06 BPEMS Board of Commr's, p.5. This requirement did not pose any difficulty to the students either in their school work or paramedic work. *See* Waller Depo., p.61, l.1-4.

The only exception to the policy occurred in 2002 when Marvin Aldridge attended class for three or four months during the day and did not work his regularly-scheduled shift. After he completed his classes, Director Scott concluded that he could have worked his regular shift because

10

of the low volume of calls at night, and that it was not economical or necessary for the students to be given a leave of absence during the week. Since that time, all employee-students have been required to work their regular shifts while attending the Paramedics program.[6]

Lindberg failed to take the both the ACT and the reading placement test in order to complete the prerequisites for the paramedics program. *See* Transcript of 3/15/06 BPEMS Board of Commr's, p.4; Plaintiff's Exhibit F. More importantly, he expressly refused to attend the paramedics program as long as he was required to comply with BPEMS's work policy.[7] Because this court finds that plaintiff was terminated solely for refusal to comply with BPEMS's policy and without regard to any comments on a matter of public concern, Plaintiff's retaliation claim fails.

## PROCEDURAL DUE PROCESS CLAIM

Plaintiff claims that he was denied procedural due process in that he was not given notice of the basis for his termination, he was not provided an opportunity to defend himself against the charges, and he was not provided post-termination review. (Record Document 1, ¶ 27). However, the requirements of procedural due process "apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents of St. Col.'s v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705 (1972). Whether an employee has a property

---

[6]BPEMS also made several attempts to accommodate the student's schedules by requiring them to go on only "major" runs, by relieving them from runs when there was a test coming up, by allowing them to be the third person on a truck, and allowing them to use their vacation time to take off for clinicals. *See* Waller Depo., p.61, l.9-12; Transcript of 3/15/06 BPEMS Board of Commr's, p.5-8.

[7]At the March 15, 2006 meeting, Lindberg stated that he has a 2-year-old daughter and wanted to be home in the evenings with his family. Nonetheless, it is undisputed that during his employment with BPEMS, Lindberg was also working as a paid employee at Bossier Parish Fire District One, South Bossier Fire Department, Bienville Fire District #6 as fire chief, and occasionally at Claiborne Ambulance.

11

interest in his job is determined by state law. *Wallace v. Shreve Memorial Library*, 79 F.3d 427, 429 (5th Cir. 1996).

Under Louisiana law, it is well-settled that there are only two ways through which Lindberg could have had a property interest in his job: (1) if Defendants' contracted with Lindberg to fire him only for cause, or (2) if he was a permanent classified employee under the Louisiana civil service system. *Id.* Essentially, in order for Lindberg to prove that he had a property interest in continued employment at BPEMS, he must prove that he was not an employee at-will. "An at-will employee is free to quit at any time without liability to his or her employer and may be terminated at any time, for any reason or for no reason at all, provided the termination does not violate any statutory or constitutional provision." *Id.*

There is no evidence that Defendants' contracted with Lindberg to fire him only for cause, nor was Lindberg a permanent classified employee under the Louisiana civil service system. *See Collins v. Town of Zwolle*, 2007 WL 2377350 (W.D. La. 2007); *see also* Scott Affidavit ¶ 11, 13; McIntyre Affidavit ¶ 18. Lindberg was free to leave his employment at anytime without liability to BPEMS, just as Defendants' could terminate him for any reason at all. As a result, plaintiff was an "at-will" employee and did not have a protected property interest in continued employment at BPEMS. Defendants' were not required to provide Lindberg with notice of his termination, a hearing, post-termination review, or any other procedural due process requirements.

Plaintiff cites to *Whiting v. Univ. of S. Miss.* which states that an employee has been deprived of a protected liberty interest if he was either "terminated for a reason which was (i) false, (ii) publicized, and (iii) stigmatizing to his standing or reputation in his community or terminated for a reason that was (i) false and (ii) had a stigmatizing effect such that (iii) he was denied other

employment opportunities as a result." 451 F.3d 339, 347 (5th Cir. 2006) (quoting *Cabrol v. Town of Youngsville*, 106 F.3d 101, 107 (5th Cir. 1997)). Plaintiff argues that the stated reason for plaintiff's termination was false and that his termination had a stigmatizing effect. *See* Record Document 30, p.21. As explained above, Defendants' stated reasons for Lindberg's termination are fully supported by the pleadings and the evidence. Because his termination was not for a "false" reason, his argument under the stated analysis fails.

## **STATE LAW CLAIM**

Plaintiff also alleges that Defendants' actions were in violation of Louisiana Revised Statute § 23:822.[8] But this provision merely declares that it is against public policy to restrict labor and union activity and allows a court to enjoin unlawful activity. The provision does not expressly or impliedly create a private cause of action entitling plaintiff to any of the relief sought in Count III

---

[8]La. R.S. § 23:822 provides:

In the interpretation and application of this Chapter, the public policy of this state is declared as follows:

Negotiation of terms and conditions of labor should result from voluntary agreement between employer and employee. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore, it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

13

of his complaint.[9]

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is hereby **GRANTED** and plaintiff's claims are **DISMISSED WITH PREJUDICE**.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

---

[9]The only recourse is found in La. R.S. § 23:824 which is a criminal statute providing the penalty for a violation of § 23:822.

14